Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio



# OPINION

No. 04-11-00877-CR

Antonio **AVILES**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 226th Judicial District Court, Bexar County, Texas
Trial Court No. 2011-CR-7244
Honorable Sid L. Harle, Judge Presiding

Opinion by:    Marialyn Barnard, Justice

Sitting:    Catherine Stone, Chief Justice
Karen Angelini, Justice
Marialyn Barnard, Justice

Delivered and Filed:  September 26, 2012

AFFIRMED

Appellant Antonio Aviles was charged with felony driving while intoxicated.  After the

trial court denied his motion to suppress, Aviles entered a plea of nolo contendere and was

sentenced to two years confinement in the Texas Department of Criminal Justice – Institutional

Division.[1]   On appeal, Aviles challenges the trial court's denial of his motion to suppress,

arguing the court erred by admitting into evidence his blood specimen because he was arrested

---

[1] Despite his plea, Aviles has a right to appeal the denial of his motion to suppress.  *See* TEX. R. APP. P. 25.2 (noting that in plea bargain cases, defendant may appeal matters raised on written motion filed and ruled on before trial, or after getting trial court's permission to appeal).

without a warrant, and his blood sample was obtained without consent and without a warrant. We affirm the trial court's judgment.

## BACKGROUND

At the hearing on the motion to suppress, Officer Joe Rios testified that on June 2, 2011, he was patrolling the streets of San Antonio as part of the DWI ("Driving While Intoxicated") enforcement program. Officer Rios was driving northbound on Zarzamora at approximately 2:20 a.m. when he saw a Mazda pickup veering across lane markers. As Officer Rios approached the vehicle, it crossed the lane markers again and veered into his lane. Based on this erratic driving, Officer Rios suspected the driver was intoxicated and initiated a traffic stop to check on the driver's condition.

Officer Rios testified that after he pulled the vehicle over, he noticed the driver, later identified as Aviles, had bloodshot eyes and slurred speech. Aviles was unsteady on his feet when Officer Rios asked him to exit the vehicle. Then, when Officer Rios asked Aviles to perform three standardized field sobriety tests—the horizontal gaze nystagmus ("HGN"), the walk-and-turn, and the one-leg-stand—Officer Rios testified Aviles exhibited signs of intoxication on each test. Based on Aviles's erratic driving, physical appearance, and performance on the field sobriety tests, Officer Rios placed Aviles under arrest for DWI.

Following the arrest, Officer Rios checked Aviles's criminal history on his mobile laptop and discovered Aviles had two prior DWI convictions. Officer Rios testified he believed the database he accessed via his mobile laptop was reliable. Officer Rios requested a specimen of Aviles's breath or blood and read him the DWI statutory warning in Spanish.[2] When Aviles refused to produce either specimen, Officer Rios required a blood draw from Aviles based upon section 724.012 of the Texas Transportation Code. Section 724.012 states: "[a] peace officer

---

[2] Aviles is a Spanish speaker.

shall require the taking of a specimen of the person's breath or blood under any of the following circumstances . . . [for example, if] at the time of the arrest, the officer possesses or receives reliable information from a credible source that the person, on two or more occasions, has been previously convicted of or placed on community supervision for an offense under Section 49.04 [DWI] . . . Penal Code." TEX. TRANSP. CODE ANN. § 724.012(b)(3)(B) (West 2011). Officer Rios took Aviles to the nurse's infirmary for the blood draw, and filled out a THP-51 statutory authorization form,[3] a mandatory blood draw checklist, and a chain of custody form. Officer Rios took Aviles to nurse Elizabeth Arguello who drew Aviles's blood. Officer Rios testified he saw the nurse draw Aviles's blood into a vial, put the vial in an envelope, and put it in a locked container inside a refrigerator.

On cross-examination, Officer Rios testified his patrol car did not have onboard video, and that Aviles did not resist or attempt to flee once he initiated the traffic stop. Officer Rios also testified he was certified to administer field sobriety tests, and he took a refresher course on the subject within the last twelve to eighteen months.

Elizabeth Arguello testified she is a registered nurse with University Hospital and assigned to the City of San Antonio magistrate's office. Arguello detailed the procedures she followed when she drew Aviles's blood following his arrest. On cross-examination, Arguello admitted she did not have a direct recollection of Aviles, and was basing her testimony on the written affidavit she signed at the time of Aviles's blood draw.

After hearing the evidence and argument, the trial court denied Aviles's motion to suppress. Thereafter, Aviles pled nolo contendere to the charge of driving while intoxicated and

---

[3] The THP-51 form contains the same language as section 724.012—"[i]f at the time of the suspect's arrest, [the police officer] possessed or received reliable information from a credible source that on two or more occasions the suspect had previously been convicted of [. . .] DWI," the officer may require the suspect to give a specimen of blood.

was sentenced to two years confinement. Aviles now appeals, contending the trial court erred in denying his motion to suppress.

ANALYSIS

On appeal, Aviles argues the trial court erred in denying his motion to suppress because: (1) he was arrested without a warrant, (2) his blood sample was obtained without consent and without a warrant,[4] and (3) the blood was admitted into evidence in violation of his rights under the Sixth, Fifth, and Fourteenth Amendments.

***Standard of Review***

We review the trial court's denial of a motion to suppress under a bifurcated standard of review. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). A trial court's determination of historical facts will be given almost total deference, while the trial court's application of the law will be reviewed de novo. *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000). When the trial court does not issue findings of fact and none are requested, as in this case, we imply findings that support the trial court's ruling if the evidence, viewed in the light most favorable to the ruling, supports those findings. *See Valtierra*, 310 S.W.3d. at 449. "[T]he trial judge is the sole trier of fact and judge of credibility of the witnesses and the weight to be given to their testimony." *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007). A trial court's ruling on a motion to suppress will be upheld if there is any valid theory of law applicable to the case, even if the trial court did not base its decision on that theory. *State v. Steelman*, 93 S.W.3d 102, 107 (Tex. Crim. App. 2002).

---

[4] Notably, Aviles fails to address the Texas Transportation Code, specifically section 724.012, which governs the issue he brings on appeal—the blood draw following his DWI arrest. Other than stating at oral argument that the statute must comply with the dictates of the state and federal constitutions, Aviles also fails to challenge the constitutionality of the statute. *See Smith v. State*, 721 S.W.2d 844, 855 (Tex. Crim. App. 1986) (holding that even constitutional claims can be waived by failing to object); *Smith v. State*, 256 S.W.3d 341, 343 (Tex. App.—San Antonio 2007) (same).

## *Warrantless Arrest*

Aviles first contends the trial court erred in denying his motion to suppress because he was arrested without a warrant. A defendant seeking to suppress evidence on the basis of an alleged Fourth Amendment violation bears the initial burden of rebutting the presumption of proper police conduct. *Young v. State*, 283 S.W.3d 854, 872 (Tex. Crim. App. 2009). A defendant meets this burden by demonstrating that the challenged search or seizure occurred without a warrant. *Id.* The burden then shifts to the State to prove that the search or seizure was reasonable under the totality of the circumstances. *Amador v. State*, 221 S.W.3d 666, 672–73 (Tex. Crim. App. 2007). This burden may be satisfied by a showing that one of the statutory exceptions to the warrant requirement is met. *See Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005).

In this case, it is undisputed that no warrant was issued for Aviles's arrest. As a result, the State bore the burden of establishing the reasonableness of Aviles's detention and arrest. *See Young*, 283 S.W.3d at 872; *Amador*, 221 S.W.3d at 672–73. Whether a specific search or seizure is reasonable or supported by probable cause is a question of law subject to de novo review. *Dixon v. State*, 206 S.W.3d 613, 616 (Tex. Crim. App. 2006).

Law enforcement officers may stop and briefly detain persons suspected of criminal activity on less information than is constitutionally required for probable cause to arrest. *Terry v. Ohio*, 392 U.S. 1, 22 (1968). To initiate an investigative stop, the officer must possess a reasonable suspicion based on specific, articulable facts that, in light of the officer's experience and general knowledge, would lead the officer to reasonably conclude that the person detained actually is, has been, or soon will be engaged in criminal activity. *United States v. Sokolow*, 490 U.S. 1, 10 (1989); *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). Whether the

officer's suspicion was reasonable is evaluated based on the totality of the circumstances. *See Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011).

At the suppression hearing, Officer Rios testified Aviles's conduct attracted his attention "at 2:20 AM at night" because he was "veering across lane markers" and "veered into his lane." We hold this erratic driving gave Officer Rios reasonable suspicion to initiate a traffic stop to check on the driver's condition. *See Curtis v. State*, 238 S.W.3d 376, 377, 381 (Tex. Crim. App. 2007) (concluding officer had reasonable suspicion that defendant was driving while intoxicated and was justified in making investigatory stop when officer saw defendant weave at least three times out of his lane over short distance around 1:00 a.m.). Aviles's driving also constituted a traffic violation, which authorized Officer Rios to make the traffic stop. *See* TEX. TRANSP. CODE ANN. § 545.060(b) (West 2011) (requiring drivers to remain in single lane unless movement outside of lane can be made safely).

When Officer Rios approached Aviles, he found Aviles had bloodshot eyes and slurred speech. When asked to exit the vehicle, Aviles was extremely unsteady on his feet. Officer Rios asked Aviles to perform three standardized field sobriety tests—the HGN, walk-and-turn, and the one-leg-stand. Officer Rios testified Aviles exhibited signs of intoxication on each test.

Whether probable cause exists to justify a warrantless arrest must be considered under the totality of the circumstances surrounding the arrest. *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009). We find the facts described above gave Officer Rios probable cause to arrest Aviles for driving while intoxicated, based on his erratic driving, slurred speech, bloodshot eyes, and performance during the field-sobriety tests. *See Torres v. State*, 182 S.W.3d 899, 901–02 (Tex. Crim. App. 2005) (allowing officer to make warrantless arrest based on his observations and personal knowledge that offense was or is being committed); *State v. Stevenson,* 958 S.W.2d

824, 829 n. 7 (Tex. Crim. App. 1997) (citing *Berkemer v. McCarty*, 468 U.S. 420, 423 (1984)) (holding appellant's failure of field sobriety test provided probable cause for arrest); *see also State v. Garrett*, 22 S.W.3d 650, 654 (Tex. App.—Austin 2000) (noting that smell of alcohol, watery eyes, and unsteadiness are all classic signs that suggest suspect's mental and physical faculties might be impaired and help establish probable cause to arrest defendant for driving while intoxicated). Therefore, we overrule Aviles's point of error regarding an improper warrantless arrest.

### *Blood Draw*

The withdrawal of a blood specimen from a person is considered a search and seizure under the Fourth Amendment. *Schmerber v. California*, 384 U.S. 757, 767 (1966). The Fourth Amendment to the United States Constitution and Article I, Section 9 of the Texas Constitution assure the right to be free from unreasonable searches. U.S. CONST. AMEND. IV; TEX. CONST. art. I, § 9. A search or seizure conducted without a warrant is per se unreasonable absent a recognized exception to the warrant requirement. *Katz v. United States*, 389 U.S. 347, 357 (1967); *Walter v. State*, 28 S.W.3d 538, 541 (Tex. Crim. App. 2000).

Aviles contends the trial court erred in admitting his blood specimen into evidence because the sample was taken without his consent and without a warrant. Aviles cites case law for the proposition that absent consent, taking a blood sample from a defendant in custody requires a validly-obtained warrant. *See Davis v. State*, 831 S.W.2d 426 (Tex. App.—Austin 1992, pet. ref'd.); *see also McBride v. State*, 840 S.W.2d 111 (Tex. App.—Austin 1992, pet. ref'd.). He also cites Article 18.01 of the Texas Code of Criminal Procedure, arguing that a blood draw is an evidentiary search requiring a warrant. However, *Davis* and *McBride* do not apply to this case because they dealt with murder and sexual assault, respectively, whereas

Aviles's case deals with an offense while operating a vehicle in a public place, and is thus governed by Chapter 724 of the Texas Transportation Code. The Texas Transportation Code expands the State's ability to search and seize without a warrant, providing implied consent to obtain blood samples from persons suspected of driving while intoxicated, in certain circumstances, even without a search warrant. As the Texas Court of Criminal Appeals held in *Beeman v. State*,

> "[t]he implied consent law [codified in TEX. TRANSP. CODE ANN. § 724.011] *expands* on the State's search capabilities by providing a framework for drawing DWI suspects' blood in the absence of a search warrant. It gives officers an additional weapon in their investigative arsenal, enabling them to draw blood in certain limited circumstances even without a search warrant."

86 S.W.3d 613, 616 (Tex. Crim. App. 2002).

The Texas Transportation Code provides that a person who has been arrested for the offense of operating a motor vehicle while intoxicated and in a public place is deemed to have consented to the taking of one or more specimens of blood or breath to analyze the alcohol concentration amount or presence of a controlled substance. TEX. TRANSP. CODE ANN. § 724.011 (West 2011). The person retains the right, subject to automatic suspension of his license, to refuse to give a specimen. *Id.* § 724.013. However, if the suspect refuses to provide a specimen voluntarily and the arresting officer has credible information that the suspect has been previously convicted twice of DWI, then the officer "shall require the taking of a specimen of the person's breath or blood . . . ." *Id.* § 724.012(b)(3)(B).

Officer Rios requested a specimen of Aviles's breath and read him the statutory warning allowing Aviles to refuse the breath and blood draws. When Aviles refused, Officer Rios required a mandatory blood draw from Aviles based on section 724.012(b)(3)(B). There is evidence that Officer Rios possessed credible information from a reliable source—his mobile

laptop—that Aviles had two prior DWI convictions. This situation, as outlined in section 724.012, is one of the "circumstances" the Texas Court of Criminal Appeals has held where blood may be drawn without a search warrant. *See Beeman*, 86 S.W.3d at 616. Thus, the warrantless seizure of Aviles's blood was conducted according to the prescriptions of the Transportation Code, and without violating Aviles's Fourth Amendment rights.

Aviles argues there was no physical impossibility for Officer Rios to obtain a warrant from the magistrate because his blood was drawn at the infirmary in the magistrate's office. This is immaterial given the mandate of section 724.012(b)(3)(B). Aviles finally argues that by admitting the blood into evidence, the court violated his rights under the Fifth, Sixth, and Fourteenth Amendments. Although Aviles presents this contention as his third point of error, he fails to address this point in the substantive portion of his brief. Thus, he has waived his last point of error. *See* TEX. R. APP. P. 38.1(i) (stating brief must contain clear and concise argument for contentions made with appropriate citations to record and authorities).

## CONCLUSION

Based on the foregoing, we hold the trial court did not err in denying Aviles's motion to suppress or in admitting his blood specimen into evidence. There was probable cause for Aviles's arrest. Furthermore, according to the Texas Transportation Code section 724.012, Officer Rios was authorized to require the mandatory blood draw from Aviles without express consent and without a warrant, given Aviles's two prior DWI convictions. Accordingly, we affirm the trial court's judgment.

Marialyn Barnard, Justice

Publish